UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Jane DOE[1] *Plaintiff*, | ) ) ) | 3:21-CV-00518 (KAD) |
| v. | ) ) | |
| LEGION OF CHRIST, INC. *Defendant*. | ) ) ) ) ) ) | FEBRUARY 25, 2022 |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, ECF No. 25**

Kari A. Dooley, United States District Judge:

In this personal injury suit, Plaintiff Jane Doe seeks damages for injuries stemming from her time as a student at the Immaculate Conception Academy, Inc. ("ICAI"). Plaintiff generally alleges that, while a minor under ICAI's care, she suffered sexual abuse at the hands of Father Daniel McCallion ("McCallion") and that Defendants ICAI and Legion of Christ, Inc. ("LOC, Inc."), as the owner and operator of ICAI, bear responsibility for that abuse. Plaintiff suffered then and continues to suffer now from psychological and emotional injuries. Against LOC, Inc., Plaintiff brings six claims in her compliant: Negligence, Recklessness, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, and Breach of the Special Duty of Care.

Pending before the Court is LOC, Inc.'s motion to dismiss Counts II and V of the Complaint, asserting recklessness and breach of fiduciary duty, respectively. For the reasons set forth below, the motion is GRANTED.

**Procedural History**

---

[1] The Court granted Plaintiff's motion to proceed by pseudonym. (ECF No. 8.)

Plaintiff filed her Complaint on April 15, 2021. (ECF Nos. 1.)  This is one of six cases pending before the Court raising similar allegations brought by different Plaintiffs. In addition to this action, also pending before the Court are the following: *John Doe #1 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00512, *John Doe #2 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00514, *John Doe #3 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00515, *John Doe #4 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00516, and *John Doe #5 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00517.

ICAI and LOC, Inc. each filed a motion to dismiss. ICAI asserted that the Court does not have personal jurisdiction over it or, alternatively, that the case should be dismissed for the reasons advanced by LOC, Inc. in its motion to dismiss. (ECF No. 24.). LOC, Inc. seeks dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), with respect to the recklessness and breach of fiduciary duty claims under Rhode Island law. (ECF No. 25.)

In response to ICAI's motion to dismiss, Plaintiff moved to withdraw the complaint as to ICAI on August 3, 2021. (ECF No. 39.) Construed as a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), the Court ordered that ICAI be terminated from this action on February 17, 2022, mooting ICAI's motion to dismiss. (ECF No. 45.) Plaintiff also filed a memorandum opposing LOC, Inc's motion to dismiss on August 3, and LOC, Inc. filed a reply brief on August 23, 2021. (ECF No. 43.)

**Allegations**

Plaintiff is an adult female who was formerly a student at ICAI in Greenville, Rhode Island. (Compl. ¶ 1.) ICAI was a private Roman Catholic boarding school for girls of high school age, and its objective was to educate precandidates who wanted to discern a vocation to the religious life of consecration in Regnum Christi, a lay organization and apostolate of The Legion of Christ.[2]

---

[2] As "Background," Plaintiff alleges that The Legion of Christ is a religious order associated with the Roman Catholic Church and that The Legion of Christ's founder engaged in the sexual molestation of children, the use of drugs, and

(Compl. ¶¶ 10–12.) LOC, Inc., which had its principal place of business and headquarters in Connecticut, owned and operated ICAI, by and through its apostolate, Regnum Christi. (Compl. ¶ 4.)

In 1995, Plaintiff, who was at the time thirteen, began her education as a precandidate at ICAI. (Compl. ¶ 12.) The Plaintiff was required to attend confession with McCallion, and these sessions would take place at night when she would be alone with the priest in the chapel. (Compl. ¶¶ 13–14.) During confession, McCallion would remove a curtain between himself and the Plaintiff and stare at her, something that McCallion was not supposed to do and something that made the Plaintiff feel awkward, uncomfortable, and "dirty." (Compl. ¶¶ 13–16.) Plaintiff's companions did not share a similar experience. (Compl. ¶ 17.) On one occasion, McCallion opened the curtain, and, looking down at his lap, asked Plaintiff "Do you know what this is?" (Compl. ¶ 18.) Plaintiff at the time thought it was a thumb but now knows it to have been McCallion's penis. (Compl. ¶ 19.) Plaintiff would send McCallion notes about her spiritual thoughts not knowing that this was not permitted. (Compl. ¶ 21.) Notwithstanding McCallion did not discourage the practice and would respond with notes to Plaintiff. (*Id.*) At times, McCallion summoned Plaintiff to his office where he would stare at her for a long time in silence making her feel uneasy. (Compl. ¶ 23.) Abruptly, McCallion was transferred to a different school; Plaintiff was questioned about her relationship with him and all of the notes were confiscated. (Compl. ¶ 24.)

The administration and/or supervision of ICAI by The Legion of Christ was under the direction and control of Defendant LOC, Inc.'s headquarters. (Compl. ¶ 5.) LOC, Inc. was in a special relationship with the Plaintiff of school-student, essentially *in loco parentis* with the

---

financial improprieties. While she does indicate that Regnum Christi was a lay organization and apostolate of The Legion of Christ, Plaintiff does not specifically explain the relationship between The Legion of Christ, the religious order, and LOC, Inc. The Complaint simply adopts "Legion of Christ" as a naming convention for collectively referring to Defendants LOC, Inc. and ICAI.

Plaintiff. (Compl. ¶ 27.) LOC, Inc. employed McCallion, and LOC, Inc. knew that McCallion was unfit to work with minors, dangerous, and a threat to the health, safety, and welfare of the Plaintiff. (Compl. ¶ 29–30.) And despite LOC, Inc.'s knowledge of McCallion's serious threat to the health, safety, and welfare of minors, LOC, Inc. provided McCallion with unfettered access to minors, including Plaintiff. (Compl. ¶ 32.) LOC, Inc. also knew of the prevalence of sexual abuse in their clergy. (Compl. ¶ 31.) Notwithstanding LOC, Inc.'s conscious awareness of the risk of harm to Plaintiff, LOC Inc. took affirmative steps to exacerbate the risk and make harm more likely by permitting McCallion to have access to Plaintiff despite knowing of McCallion's dangerous propensities and failing to take immediate and proper steps to limit contact between McCallion and Plaintiff. (Compl. ¶ 47.)

As a direct and proximate result of LOC, Inc.'s actions, the Plaintiff suffered and continued to suffer injuries of a serious nature, including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation, and costs associated with medical/psychological treatment. (Compl. ¶ 44.) These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future. (*Id.*).

**Legal Standard**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it

4

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

In seeking dismissal of Counts II and V, LOC, Inc. argues Rhode Island law does not recognize an independent cause of action for recklessness under circumstances not giving rise to an intentional tort, and further that Plaintiff cannot bring a claim for breach of fiduciary duty because Rhode Island law does not recognize a fiduciary relationship between a student and a secondary school. In response, Plaintiff argues that Connecticut law, not Rhode Island law, applies to this case. Alternatively, Plaintiff asserts that she plausibly alleged a cause of action for both recklessness and breach of fiduciary duty under Rhode Island law.

The Court begins, as it must, with the conflict of laws analysis.

***Connecticut vs. Rhode Island Law***

Generally, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court. *Liberty Synergistics, Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 494–97 (1941); *Sun Oil Co. v. Wortman*, 486 U.S. 717, 729–30 (1988)) (further citations omitted). In Connecticut, courts apply the "most significant" relationship test set forth in §§ 6(2) and 145 of the Restatement (Second) of Conflict of Laws to determine which rules of decision would apply in tort actions.

5

*Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 551 n.9 (2016). "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation, and business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2). *See also Stanley Works Israel Ltd. v. 500 Group, Inc.*, 332 F. Supp. 3d 488, 498 (D. Conn. 2018) (citing *Otis Elevator Co. v. Factory Mut. Ins. Co.*, 353 F.Supp.2d 274, 285 (D. Conn. 2005)) (discussing these four factors). "[I]t is the significance, not the number of the § 145(2) contacts that determines the outcome of the choice of law inquiry under the Restatement approach." *Western Dermatology Consultants, P.C.*, 322 Conn. at 560. In performing this four-factor analysis the Court is further guided by the principles and policies which are implicated in a choice of law analysis:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and, (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2). *See also Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 351 (D. Conn. 2013) ("The Court must consider [§ 145(2)] contacts in the context of the relevant policies and interests of the jurisdictions involved.").

Here, the parties agree that the four-prong test set out in § 145(2) of the Restatement determines the outcome of this inquiry but disagree as to what that outcome is. LOC, Inc. argues that all four § 145(2) factors favor applying Rhode Island law because, broadly speaking, the alleged abuse and Plaintiff's injury occurred in Rhode Island. Plaintiff, on the other hand, asserts

that the causes of action arise from the Defendant's conduct and decisions regarding the operation of ICAI, which were all made in Connecticut. The Plaintiff thus argues that the Court must also consider the seven principles found in § 6 and that such consideration favors applying Connecticut law. In reply, LOC, Inc. asserts that the seven factors found in § 6 are either neutral or support applying Rhode Island law.

The Court agrees with LOC, Inc. Plaintiff's claims derive from the abuse she suffered at ICAI in Rhode Island.  Thus Rhode Island is the place where the injury occurred, as well as the place where the conduct causing the injury occurred. Restatement (Second) of Conflict of Laws §§ 145(2)(a) & (b).  While there are allegations that conduct outside of Rhode Island contributed to or enabled the abuse, without the abuse there is no injury nor claims arising from the same. *See Almonte v. New York Medical College*, 851 F. Supp. 34, 39 (D. Conn. 1994) (holding that Connecticut law applied where the alleged sexual abuse occurred in Connecticut but the alleged negligence occurred in New York). *See also Knights of Columbus*, 930 F. Supp. 2d at 352 (applying Texas law to a Connecticut organization accused, *inter alia*, of negligence in letting at least one member of that organization have access to and sexually abuse a minor in Texas). Section 145(2)(c) is neutral. Although LOC, Inc. is alleged to be a Connecticut corporation with its principal place of business in Connecticut, at the time that the abuse occurred, Plaintiff resided in Rhode Island. But Plaintiff's residence in Rhode Island during the events in question supports a finding that the relationship between the parties, at the time, was centered in Rhode Island. *See* Restatement (Second) of Conflict of Laws § 145(2)(d). Thus although Plaintiff repeatedly emphasizes that LOC, Inc. had "a duty to protect Plaintiff *from Connecticut*," *e.g.*, Pl.'s Opp. Mem. 6, ECF No. 38, in this context any duty LOC, Inc. had was to a duty owed to the Plaintiff where the Plaintiff herself was located—in Rhode Island.

The Court has considered Plaintiff's policy arguments advanced under § 6 of the Restatement and finds them unpersuasive when viewed in the context of a case where three of the four factors set forth in §145(2) overwhelmingly favor the application of Rhode Island law.

***Recklessness & Breach of Fiduciary Duty under Rhode Island Law***

The Court next turns to whether Rhode Island law recognizes recklessness which does not rise to the level of intentional conduct as an independent cause of action and whether, under Rhode Island law, a breach of fiduciary duty claim is cognizable under the circumstances alleged here. LOC, Inc. asks the Court to answer both inquires in the negative. Plaintiff asserts that both claims are cognizable and adequately alleged.

As to the recklessness count, "[w]ith one very limited exception, Rhode Island does not distinguish between degrees of negligence and, therefore, does not recognize a separate cause of action for gross negligence . . . The exception is set forth in the 'good samaritan' statute which immunizes emergency medical technicians . . . from liability for conduct during the performance of their duties unless they are guilty of gross negligence or willful misconduct." *Corvello v. New England Gas Co.*, 460 F. Supp. 2d 314, 321 (D.R.I. 2006) (citing R.I. Gen. Laws § 23–4.1–12) (further citations omitted). Beside that exception "it is well settled in Rhode Island that no degrees of negligence are recognized." *Corrigan v. Dun & Bradstreet*, 91 F. Supp. 424, 426 (D.R.I. 1950) (citing *National India Rubber Co. v. Kilroe*, 173 A. 86 (1934); *Bines v. United Electric Railways Co.*, 148 A. 417 (1930)); *see also Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*, 778 F. Supp. 101, 105 (D.R.I. 1991) ("The legal authority that [Plaintiff] cites to support his differentiation of three distinct kinds of negligence does not have effect in Rhode Island. The Court must analyze the allegations of negligence, gross negligence, and negligence per se as one allegation of

8

negligence."); *Leonard v. Bartle*, 135 A. 853 (R.I. 1927) ("In this state the doctrine of degrees of negligence has never been adopted.").

While these principles do not preclude the possible recognition of a cause of action for recklessness, the parties agree that the Rhode Island Supreme Court has never done so. And in other contexts, "gross negligence" is defined as "'the intentional failure to perform a manifest duty in a reckless disregard of the consequences as affecting the life or property of another.' . . . [G]ross negligence demands evidence of near recklessness or shockingly unjustified and unreasonable action." *Newton v. Seahorse Marina, Inc.*, No. C.A. 83-4998, 1988 WL 1017209, at *2 (R.I. Sup. Ct. Mar. 17, 1988) (quoting Black's Law Dictionary, p. 591 (5th ed.); citing *Leite v. City of Providence,* 463 F. Supp. 585 (D.R.I. 1978)) (deciding whether a party's breach of contract was the result of gross negligence). Thus, to the extent gross negligence, which is not recognized as a distinct cause of action, is defined as a form of recklessness, it does not appear that Rhode Island courts would accept and recognize a distinct cause of action sounding in recklessness.

Nevertheless, Plaintiff asserts that an independent clam for recklessness may be viable and relies on several cases in which the Rhode Island Supreme Court held that allegations of recklessness might be sufficient to overcome barriers to claims which would be otherwise barred under the circumstances.  For example, in *Kiley v. Patterson*, 763 A.2d 583, 584 (R.I. 2000) the Rhode Island Supreme Court held that allegations of negligence were insufficient to state a cause of action against a softball player for injuries plaintiff sustained during a softball game and that the duty of care owed by athletes who participate in sporting events is measured by willfulness or recklessness standards.  But establishing a duty of care is not the equivalent of recognizing a cause of action. "Whether the duty is to exercise ordinary care, or, as in the case of the common carrier of passengers, the utmost care, although the measure of the duty, the amount of care required,

9

differs according to the particular circumstances, the breach of the duty in each case is negligence, which is not divisible into different grades." *Leonard*, *supra*.

Accordingly, this Court declines Plaintiff's invitation to be the first court to recognize a cause of action sounding in recklessness under Rhode Island law. Count II is dismissed.

As to the breach of fiduciary duty claim, LOC, Inc. asserts that Rhode Island law has not recognized a breach fiduciary duty claim in an educational setting and that, in any event, Plaintiff has not sufficiently alleged a breach of fiduciary duty claim if such a cause of action does exist. LOC, Inc. relies upon the fact that there are only limited circumstances under which Rhode Island has recognized a fiduciary duty. Plaintiff responds by arguing that Rhode Island courts are flexible when defining fiduciary relationships and that Plaintiff has adequately alleged a breach of fiduciary duty claim.

"In general, the elements of a fiduciary duty claim consist of (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Chain Store Maintenance, Inc. v. National Glass & Gate Service, Inc.*, No. Civ.A. PB 01-3522, 2004 WL 877599, at *13 (R.I. Sup. Ct. Apr. 21, 2004) (quotations omitted); *see also Audette v. Poulin*, 127 A.3d 908, 910 (R.I. 2015) (indicating that, in Rhode Island, claims of negligence and breach of fiduciary duty against an attorney are essentially claims for legal malpractice and discussing the three elements of those claims). There are no definitive rules about when a confidential or fiduciary relationship may be found. *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I. 1985). "The court may consider a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions." *Id.* (citing Bogert, *Trusts and Trustees*, § 482 at 280–336 (2d rev. ed. 1978)); *see*

10

also *A. Teixeira & Co., Inc. v. Texeira*, 699 A.2d 1383, 1387 (R.I. 1997) (holding that two shareholders, who were neither directors nor corporate officers, owed a fiduciary duty to the corporation and to other shareholders because the shareholders acted as partners to one another).

The parties agree that the Rhode Island courts have neither recognized nor declined to recognize a fiduciary relationship between a secondary school, or, as is the case, here the school's alleged owner and a student. And the Court questions whether Rhode Island courts would recognize such a fiduciary relationship. LOC, Inc. cites to *Doe v. McKenna*, No. C.A. 94-7084, 1998 WL 269228, at *3 (R.I. Sup. Ct. May 8, 1998) a Rhode Island Superior Court case for the proposition that schools in Rhode Island have a special relationship with students, not a fiduciary one. (Def.'s Mem. 7, ECF No. 25-1.) But the *McKenna* court merely held that the school had a special *duty* to the plaintiff-student for purposes of determining the applicability of Rhode Island's "public duty doctrine." *Id.* at *4. The *McKenna* court did however cite to *Marquay v. Eno*, 662 A.2d 272, 279 (N.H. 1995) in reaching its conclusion. And in *Marquay*, the New Hampshire Supreme Court held "that a special relationship exists between primary and secondary schools and their students, and that that relationship imposes a duty of care upon schools to protect students who they know or should know are being sexually abused by school employees." *Schneider v. Plymouth State College*, 744 A.2d 101, 106 (N.H. 1999) (citing *Marquay*, 662 A.2d at 279). The New Hampshire Supreme Court based its decision "in part on the role of schools as parental proxies over minor students." *Id.* So although *McKenna* does not specifically preclude fiduciary duty claims by students against schools, it is, in the Court's view fairly read to support the proposition that a negligence cause of action is the proper course in the educational context. *See also Dextraze v. Bernard*, 253 A.3d 411, 416–417 (R.I. 2021) ("Although we do not expect schools to be insurers of students' safety, we do require schools to exercise a degree of care that includes

11

protecting students from reasonably foreseeable harm."); *Daniels v. Fluette*, 64 A.3d 302, 306 (R.I. 2013) (holding that, absent a specific act or omission, the Rhode Island Supreme Court would be reluctant to impose upon schools a standard that would require them to expend additional resources to supervise their students); *Medeiros v. Sitrin*, 984 A.2d 620, 625–26 (R.I. 2009) (assuming without deciding that a school owed a duty of supervision to a student, a breach of which sounded in negligence).

Given the caselaw that describes a school's duty only in terms of negligence actions, and absent authority to suggest that the Rhode Island courts would impose fiduciary duties on secondary schools with respect to their students, the Court declines to do so here. Count V is dismissed.

**Conclusion**

For the forgoing reasons, the motion to dismiss Counts II and V is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of February 2022.

                                        */s/ Kari A. Dooley*
                                        KARI A. DOOLEY
                                        UNITED STATES DISTRICT JUDGE